Tilghman C. J.
(After stating the case.) On the trial „ , . , \ , ' . , or this cause parol evidence was given to explain the transJ actions respecting the two sales, and the Judge delivered a charge, to which the defendant’s counsel excepted. The Judge was requested to give his opinion to the jury on seven points, which are stated in the record. But the exceptions may be reduced in substance to two points. 1st. Was there a judgment and execution sufficient to authorise the sheriff to make a sale. 2d. Had the Court authority to set aside the second sale and confirm the first.
1. That there was a regular judgment is not denied. But it is objected, thatthe levari facias issued several years after the judgment without a scire facias to revive it. This was an irregularity unless there was some circumstance unknown to us, (such as a stay of execution at the request of the defendant,) to account for the delay. But, to make the most of it, thé execution was not void but voidable only; having been issued by a Court of competent authority, and founded on a valid judgment. The Court which issued it might, on cause shewn, have set it aside on motion, and perhaps it might have been avoided on a writ of error. But the sheriff was authorised to make the sale, and no other Court cán question the validity of the execution in this collateral way.. The same point has been determined by this Court before.
2. The sale of lands by virtue of an execution is founded on our acts of assembly. The act of 1705, (1 Smith’s Laws, 57.) authorises the sheriff to seize, and make sale, and prescribes the manner of selling and notice of sale. After the sale, “ the sheriff is to make return, indorsed, or annexed to “ the levari facias, and give the buyer a deed duly executed w and acknowledged for what is sold, as has been heretofore u used upon the sheriff’s sale of lands.” We are hére referred to an ’ímcient custom not now to be known but by tradition, and the best evidence of it is the practice'of the Court. There is no doubt but the uniform practice has been for the Court to inquire into the circumstances of the sale, on motion, before the acknowledgment of the deed, and to set aside *431 or confirm the sale, according to their opinion of the justice •of the case. And this construction of the law appears reasonable, because it is convenient. In Chancery, when a sale is made by order of the Court, the Chancellor inquires freely into the circumstances of the sale, and. sets it aside if he thinks proper. In setting aside such a sale there can be no harm, because the purchaser pays no money, and the land is sold again. There is a manifest propriety in vesting the Court, by whose authority the sale is made, with power to inquire into the manner in which it has been conducted. This is not denied by the counsel for the plaintiff in error, provided the inquiry is made at the proper time. They do not deny the authority of the Court to set aside the sale to Hollingsworth, because it was not done at the Term to which -the execution was returnable.. But they contend, that after the sheriff had returned the first levari facias “ unsold for want of buyers f and alias lev. fa. had issued, it was not in the power of the Court to alter the sheriff’s return, and confirm the first sale. In considering this objection, the first thought which occurs is, that it was the attorney for Hollingsworth. who brought the subject of the first sale before the Court, by a motion to quash the proceedings on the first levari. This naturally led to an inquiry into the circumstances of that sale, and it appeared to the Court, that instead of being quashed, it ought to be confirmed. They thought that the sheriff had made an improper return, and made'an order that he should amend it. But I do not take this order to be compulsory, for I agree with the counsel for the plaintiff in error, that the sheriff cannot be compelled to alter his return, as to matter of fact. I consider it rather as leave to the sheriff to amend his return; and this leavé might be important to the sheriff, as he was liable to an action by Jackson, in case he had made a false return. Now whether Jackson had made default in payment might not have been purely a question of fact. It seems Mr. Kidd, attorney for Hollingsworth., had advised the shei iff, that because they money was not paid immediately down, the law implied a default. But something-was to be done on the part of the sheriff before the purchaser was in default. At least the sheriff should be ready to give him a deed for the land. What evidence was before the Court we know not, but it se'ems they thought there had been no default in payment, and therefore, that .the sale to *432 Jackson should stand. The order of Court confirming the sale to Jackson is not conclusive. In an ejectment by HoifaigsTvorth it was competent to him to shew, that there was-no judgment to support the execution, or that legal notice of the sale had not been given, or that the sale had been conducted fraudulently. But that i.s not now .the question. The plaintiff in error contends, that the first return made by the sheriff was unalterable and conclusive. To this I cannot agree. The reason most relied on against the amendment of the return is, that after the Term the Court had no power to alter the record. But the ancient strictness in this respect has been long- relaxed. Judgments are every day opened, more than one Term after their entry: and records are amended even after writs of error brought. The sheriff’s return to the first levari, and the issuing of the alias levari are matters- which were probably unknown to the Court, till brought before them, on the hearing of the motion, and the order for the amendment was made before any deed had been acknowledged' by the sheriff. So that ho unnecessary delay appears. It has been objected, that the sheriff did not in fact alter his first return. But that is immaterial. The amendment ordered is to be considered as made, as the sheriff acted in pursuance of the order, by making a deed to Jackson, in which it is asserted, that the land was sold to Jack-. san, he being the highest and best bidder. On the whole, the point’now to be decided is, whether the Court exceeded their powers, in making the order for amendment of the sheriff’s return, and confirmation of the sale to Jackson. I am of opinion, that they did not: and therefore there-is no error in the charge of the President of the Court of Common Pleas.
Yeates J.
The Court below correctly determined, that the levari facias issued in November Term, 1793, justified the sheriff’s sale of the mortgaged premises: but the reason given for it I cannot acquiesce in, — that it does not appear when the judgment was entered. The judgment can only be considered as entered in August Term, 1790, for default of appearance on the return of the scire facias. .The true reason is, the levari facias was not absolutely void, but voidable. The execution of M'-Lees might have avoided it on a writ of error, or on motion, to quash it on the return of the process. *433 The judgment and execution remain in full force, and war•rant the sheriff in proceeding to a sale to strangers who are not bound to examine the regularity of the record. Should the iudgment be reversed for error, the lands sold are not to be T , , , . , restored: the money only arising rrom the sale is to be returned under the express provision of the 9th section of the old act of 1705. Such also was the policy of the common law, independently of our act of assembly, on the sales of ■terms for years. Otherwise, say our books, no man would purchase at sheriff’s sales.
. The great question in this case turns on the validity of the Court’s order, made in January Term, 1794, that the sale of the sheriff on the first levari facias should be confirmed; the sheriff to amend his return and make a deed accordingly, and that the second sale to Levi Hollingsworth should be set aside. It was made on the motion of Hollingsworth, to shew cause why the proceedings on the original levari facias should not be quashed, and the sale on the second levari facias be confirmed. But although the inquiry was instituted by the purchaser at the second sale, it is now contended on his behalf, that the Court acted arbitrarily in directing the sheriff to amend his return made to November Term, 1793, that Cay's tract had been struck off to Jeremiah Jackson for 67 pounds : but that he having made default in his payment thereof the tract remained in his hands unsold for want of buyers. It has been urged, that the return having been made to the preceding Term, became a matter of record, which could not be changed by any subsequent order of the Court. The remark is correct as to a judgment rendered on a verdict in a civil or criminal case, but it is not universally true. It is every day’s practice to open judgments in a succeeding Term, to let the parties into a trial on the merits on proper grounds shewn, as well as to supersede and modify fórmer rules entered in a cause, in order to do complete jus•tice. It is not objected, that the Court could not set aside 'the sale to Hollingsworth: and it is obvious, that in the exercise of their legal discretion they must necessarily take into consideration the anterior facts.
Courts of justice possess the superintendance and controul over the conduct of their officers and exercise it daily. If a sheriff should arrest a privileged man, or break open doors to execute .process, or make an arrest in- a civil case on Sunday, *434 the Court on application would discharge the party, and not turn him round to his remedy against the offending officer; if they were confined to that remedy it would often prove worse than the disease itself. Consulting the true interestg 0£ cre(jitors as well as debtors, we have decided, that different tracts of land and houses levied upon in the same suit should be sold separately, and where the sheriff has pursued a different line of conduct we have set aside the sale made by him, unless the particular case could be shewn to form a clear exception to the general rule. ,We have reason to believe, that the acknowledgment of sheriff’s deeds on their sales of lands were coeval with the first law subjecting real estate to the payment of debts. In the words of sect. 4, of the act of 1/05, “ the sheriff or other officer shall make return “ of his sale, indorsed or annexed to the levari facias, and “ give the buyer a deed duly executed and acknowledged in “ Court for what is sold, as has been heretofore used upon the “ sheriff’s sale of lands.” Although, therefore, the time of commencement of this practice cannot be fixed with precision, we know that it was in full operation at least 111 years ago: and its extent for above half a century cannot now be mistaken. Upon exceptions taken to a sheriff’s sale op the sheriff’s offering to acknowledge the deed, the Court will hear every thing that can be urged against the regularity of the proceedings, and the conduct of the sheriff, the plaintiff in the suit, and the purchaser; and receive or refuse the acknowledgment of the deed, according to the proofs made before them. This is the proper period for persons interested, in the sale to take advantage of mere irregularities. But it has been more than once decided, that such_persons are not concluded by the acknowledgment where there is no judgment or execution whereon to ground the sale; or where there has been fraud or unfairness'practised by the sheriff or purchaser. The proper parties may contest these facts in an ejectment, wherein the title to the lands comes in question; or if injured by the official conduct of the'sheriff may maintain an action against him for the damages they may have sustained.
What injury then has been done to Mr. Hollingsworth ? He chose voluntarily his own tribunal, and we are bound to presume, that the Court of Common Pleas decided with impartiality, who were best entitled to the sheriff’s deed. The- *435 lands in question were struck off at public action to Jeremiah Jackson, but the sheriff was prevailed upon by Hollingsworth’s attorney to make return, that it remained in his hands unsold for want of buyers, Jackson having made default m his payments. We cannot but conclude, that this supposed default was fully examined into by the justices who made the order, and that they would not have sanctioned the sacrifice of the lands to a purchaser, who had not complied with the terms of sale. At the same time it was their duty not to discourage bidders at sheriff’s sales : for this would be injurious to the interests both of creditors and debtors. The payment of the money and receiving the deed should be cotemporaneous acts, though the practice is otherwise. The Court had power to sanction the sale: but if Jackson had forfeited his pretensions as the highest bidder, the sheriff might have refused giving him the deed at his own risk, and the merits of the case, in a suit brought by Jackson, would have come on to be determined by the jury.
Upon the whole, I see no error jn the opinion of the Court below, of which the now plaintiff can avail himself, and therefore I concur in opinion, that the judgment below should be .affirmed.
Judgment affirmed.